# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

**BY:** ☐ COMPLAINT   ☒ INFORMATION   ☐ INDICTMENT   ☐ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

## OFFENSE CHARGED

18 U.S.C. §§ 371 and 1519 - Conspiracy to Falsify Records in Federal Investigation

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

**PENALTY:** 5 Years Imprisonment;
3 Years Supervised Release;
$250,000 Fine; and
$100 Special Assessment

## DEFENDANT - U.S

▶ JESSICA ANN GOEBEL

**DISTRICT COURT NUMBER**
4:25-cr-00373-YGR

**FILED**
Nov 05 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)
SoEun Pipal, IRS-Criminal Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. ATTORNEY    ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form
Craig H. Missakian

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)
Colin Sampson

## DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction    ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No   If "Yes" give date filed _____

**DATE OF ARREST** ▶ Month/Day/Year _____

Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year _____

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:** ☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT    Bail Amount: _____

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address:

Date/Time: _____    Before Judge: _____

Comments:

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

FILED
Nov 05 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 4:25-cr-00373-YGR |
| Plaintiff, | |
| v. | VIOLATIONS: 18 U.S.C. §§ 371 and 1519 – Conspiracy to Falsify Records to Obstruct Investigation |
| JESSICA ANN GOEBEL, | |
| Defendant. | OAKLAND VENUE |

I N F O R M A T I O N

The United States Attorney charges:

At all times relevant to this information, unless otherwise indicated, and with all dates being approximate and all date ranges both approximate and inclusive:

### The Federal Alcohol Administration ("FAA" Act) and Regulations

1. After the ratification of the Twenty-First Amendment to the United States Constitution in 1933, the retail sale and consumption of alcoholic beverages became legal again in the United States. The Twenty-First Amendment authorized states to institute laws to control the production, distribution, and sale of alcoholic beverages within their borders. Many states, including California, opted for a so-called "three-tier system" consisting of: (i) manufacturers or importers of distilled spirits and wine ("suppliers"); (ii) wholesalers (also known as "distributors"); and (iii) retailers.

2. Congress passed the FAA Act in 1935. The Alcohol and Tobacco Tax and Trade Bureau ("TTB") was created in January of 2003, when the Bureau of Alcohol, Tobacco and Firearms was reorganized under the Homeland Security Act of 2002. TTB is a bureau of the United States

INFORMATION                                1

1  Department of the Treasury which, among other things, regulates alcohol beverage "industry members"
2  including any person engaged in business as a supplier or wholesaler of distilled spirits, wine or malt
3  beverages, and collects excise taxes.

4      3.    The State of California's Alcoholic Beverage Control ("ABC") issues licenses to alcohol
5  beverage suppliers, importers, warehousers, and wholesalers of alcohol beverages, among other
6  categories.

7      4.    TTB issues permits to alcohol beverage wholesalers ("distributors") and
8  importers/manufacturers (hereafter "suppliers"), among other industry members.

9      5.    Under the trade practice regulations administered by TTB, alcohol beverage wholesalers
10  and retailers are considered "trade buyers."

11      6.    A subset of regulations administered by TTB, known as the "trade practice regulations,"
12  prohibit members of the alcohol beverage industry from, among other things, engaging in certain
13  marketing practices which threaten the independence of a trade buyer or unfairly advantages that
14  industry member over their competitors.  These trade practice regulations prohibit activities that, directly
15  or indirectly, effect control over trade buyers by causing them to purchase less of a competing product or
16  puts the independence of a trade buyer at risk, including "commercial bribery," a practice involving an
17  industry member offering a bribe to a trade buyer to purchase or promote a certain product to the
18  detriment and exclusion of competing products.

19      7.    TTB investigators conduct investigations into violations of trade practice regulations.
20  TTB has a right of access to inspect, copy, and examine records and documentation kept and maintained
21  by permit holders, including documents related to the sale and marketing of alcohol products.  With
22  respect to non-permit holders, administrative subpoenas for TTB investigations must be approved by a
23  delegate of the Administrator of TTB before they are served.

## Introductory Allegations

25      8.    J. Go Events, Inc. ("J. Go Events"), was a company registered in California beginning on
26  or about December 18, 2017.  On or about December 31, 2020, J. Go Events merged with J. Go Events
27  MT, Inc., and was registered in the State of Montana.

28

INFORMATION                                            2

1         9.      JESSICA GOEBEL was a resident of Alameda County, California, from at least 2010 until at least August 30, 2021.

        10.     GOEBEL was the owner and principal of J. Go Events.

        11.     GOEBEL, through J. Go Events, provided services as an approved vendor of a large national alcohol distribution company identified herein as DISTRIBUTOR-1. DISTRIBUTOR-1 operated in California with multiple offices, including offices in Alameda County, in the Northern District of California.

        12.     As an approved vendor of DISTRIBUTOR-1, GOEBEL, on behalf of J. Go Events, signed a certification stating that J. Go Events would comply with all California and Federal laws and regulations governing alcohol distribution. GOEBEL further affirmed that no payments would be made to any alcoholic beverage retail licensee or any employee of such licensee. As used herein, an "alcoholic beverage retail licensee" is a retail location licensed to sell alcoholic beverages, such as grocery stores.

        13.     DISTRIBUTOR-1 and its employees, and employees of alcohol suppliers to DISTRIBUTOR-1, requested that J. Go Events purchase items including, but not limited to, millions of dollars in prepaid gift cards ("gift cards"), and plan events or travel on behalf of DISTRIBUTOR-1 and its alcohol beverage suppliers, such as trips to Hawaii and Las Vegas. To fund these items, J. Go Events was directed by employees of DISTRIBUTOR-1 and its suppliers to prepare and submit false invoices. J. Go Events submitted false invoices to DISTRIBUTOR-1 and/or to specific alcohol suppliers distributed by DISTRIBUTOR-1. In those instances, GOEBEL sought approval for payment of the invoice from that particular alcohol supplier and DISTRIBUTOR-1.

        14.     After the false invoices were paid, GOEBEL would hold some or all of the proceeds in "banks" for the use of individual employees of certain alcohol suppliers, DISTRIBUTOR-1, and certain alcohol retailers, and would spend or transfer the money as directed by these employees.

        15.     J. Go Events typically charged a 10% fee for its services. J. Go Events did not withhold any income or other taxes related to the gift cards or funds it held for the use of employees of DISTRIBUTOR-1 and its alcohol suppliers.

//

The Scheme to Obstruct

16. DISTRIBUTOR-1 and its employees, including employees based at DISTRIBUTOR-1's Northern California office in Alameda County, California, at times requested that GOEBEL, through J. Go Events, purchase and deliver or mail gift cards to its employees.

17. At the request of DISTRIBUTOR-1's employees, GOEBEL purchased and mailed to employees of DISTRIBUTOR-1, millions of dollars in prepaid gift cards. GOEBEL mailed some of these gift cards to DISTRIBUTOR-1 employees at DISTRIBUTOR-1's office in Alameda County, California.

18. Employees of DISTRIBUTOR-1, including the Controller of its California subsidiary, requested that the invoices submitted by GOEBEL to DISTRIBUTOR-1 for the purchase of gift cards provide false and generic descriptions for services rendered, such as "Bay Area On Premise Holiday Dinner" or "Educational Training and Tasting Seminar."

19. Between at least 2017 and at least 2021, J. Go Events ordered millions of dollars in gift cards worth up to $1,000 each at the direction of employees of a large national wine brand distributed by DISTRIBUTOR-1 and identified here as SUPPLIER-1, including sales managers MATTHEW ADLER and BRYAN BARNES, as well as employees of DISTRIBUTOR-1 and of other alcohol suppliers distributed by DISTRIBUTOR-1. J. Go Events mailed over $500,000 worth of gift cards to California-based employees of SUPPLIER-1 between 2019 and 2021.

20. Some of these gift cards were for employees of DISTRIBUTOR-1 as off-book or "creative" incentives or compensation for meeting alcohol sales goals. Other gift cards were given by employees of DISTRIBUTOR-1 and/or its alcohol suppliers to alcohol buyers at large national grocery store chains, including Retailer-1, which owned and operated regional grocery store chain brands in California and elsewhere, identified herein as Retailer-1A and Retailer-1B.

21. At the direction of employees of DISTRIBUTOR-1, GOEBEL and her employees arranged travel for employees of DISTRIBUTOR-1 and some of its alcohol suppliers.

22. GOEBEL was then directed by multiple employees of DISTRIBUTOR-1 or employees of alcohol suppliers distributed by DISTRIBUTOR-1 to inflate the amount in the invoices issued to DISTRIBUTOR-1 and then transfer the overbilled, falsely invoiced funds into individual "banks" or

INFORMATION                                    4

"travel banks," which were held by J. Go Events for future use by certain alcohol industry employees. J. Go Events used accounting spreadsheets to track the funds GOEBEL was directed to make available for employees of DISTRIBUTOR-1 and its alcohol suppliers. J. Go Events also created an online portal for individuals to log in to view the balance of funds in their respective banks. In some instances, employees of DISTRIBUTOR-1 and its suppliers would direct GOEBEL to hold and divide the overbilled, falsely invoiced funds for the personal use of multiple individuals in predetermined amounts.

23. Employees of DISTRIBUTOR-1 and its alcohol suppliers directed GOEBEL to, among other things, use "bank" funds to arrange for purchases of air travel and related amenities for those employees and their family members, including Super Bowl tickets, international vacations, first class flights, luxury automobile rentals, gift cards, and resort bookings with golf and massage packages.

24. GOEBEL, on behalf of J. Go Events, sent emails notifying individuals that they had been given funds, sometimes called "travel funds" or "client vouchers." GOEBEL also allowed holders of "banks" to transfer funds to other "banks" held by J. Go Events.

25. Using funds held in "banks" or payments received pursuant to invoices containing false and misleading descriptions provided by employees of DISTRIBUTOR-1 and employees of suppliers, such as SUPPLIER-1, GOEBEL planned vacations and interstate travel for numerous employees of DISTRIBUTOR-1, SUPPLIER-1, other alcohol suppliers, and employees of retailers, including PATRICK BRIONES of Retailer-1A, and others.

26. J. Go Events was directed by DISTRIBUTOR-1 employees to purchase numerous items of value for an individual identified as INDIVIDUAL-4, an alcohol buyer for Retailer-1B, a large grocery store brand operating more than 200 stores in Northern California. At the direction of an individual identified as INDIVIDUAL-3, an employee of DISTRIBUTOR-1, J. Go Events purchased business class flights, hotel rooms, tickets to Broadway shows, and wine tours for INDIVIDUAL-4 and arranged for their attendance at events in New York City on multiple occasions. J. Go. Events also arranged for concert passes to a Napa, California music festival and spa treatments for INDIVIDUAL-4 and a relative of INDIVIDUAL-4. INDIVIDUAL-3 coordinated some of these purchases through JOHN HERZOG, a consultant for an alcohol supplier distributed by DISTRIBUTOR-1 and identified herein as SUPPLIER-2.

INFORMATION                                    5

27. Between at least 2017 and November 2022, GOEBEL used false J. Go Events invoices to bank several million dollars for the future spending of employees of DISTRIBUTOR-1, including numerous Regional Vice Presidents, and for employees of suppliers, including ADLER and BARNES of SUPPLIER-1. GOEBEL further maintained banks funded by alcohol industry members for spending by employees of a department store chain identified as RETAILER-2, and a restaurant chain identified as RETAILER-3.

COUNT ONE: (18 U.S.C. §§ 371 and 1519 – Conspiracy to Falsify Records to Obstruct Investigation)

28. Paragraphs 1 through 27 above are incorporated and realleged as if fully set forth here.

29. Beginning no later than April 2013, and continuing until at least August 30, 2021, in the Northern District of California and elsewhere, the defendant,

JESSICA ANN GOEBEL,

did unlawfully and knowingly conspire with others known and unknown to the Grand Jury, to corruptly alter, and falsify records, documents, and other objects, to wit, invoices of J. Go Events, Inc. issued to alcohol industry members, including DISTRIBUTOR-1, SUPPLIER-1, and others, at the direction of employees of said industry members, with the intent to impede, obstruct and influence an actual and contemplated investigation and the proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the Department of Treasury, Alcohol and Tobacco Tax and Trade Bureau.

All in violation of Title 18, United States Code, Sections 371 and 1519.

CRAIG MISSAKIAN
United States Attorney

Dated: November 5, 2025

*/s/   Colin Sampson*
ALEXANDRA SHEPARD
COLIN SAMPSON
Assistant United States Attorneys